UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELLEN FELDHAUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 4:19-CV-2249-SPM |
| | ) | |
| | ) | |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Ellen Feldhaus ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 9). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

**I.   FACTUAL BACKGROUND**

On February 4, 2019, Plaintiff testified at a hearing before an administrative law judge ("ALJ"). Plaintiff has a bachelor's degree in nursing. (Tr. 610). She last worked in 2017, doing some private duty nursing two days a week. (Tr. 610). This involved taking care of quadriplegics, but it was physically difficult, and she quit doing it. (Tr. 608). She has also worked in the past

doing general nursing duties in a hospital, as a nursing supervisor, and handling medications and doing physical assessments in a day program. (Tr. 611-15).

Plaintiff testified that she has pain primarily in her neck and low back. (Tr. 615). She has had two cervical fusions and a lumbar fusion. (Tr. 615). She has also had issues with both feet, including bunion surgeries, a ruptured tendon repair on both of her second toes, and surgery on her left foot. (Tr. 615). She has also developed a Morton's neuroma on her foot, and she has had steroid injections that helped temporarily. (Tr. 615-16).

Plaintiff has depression and dark thoughts, including thoughts of killing herself. (Tr. 616). She also has anxiety that makes her feel like jumping out of her skin. (Tr. 624). She does not like to be out of her house and only really goes out for doctor's appointments. (Tr. 624).

Plaintiff has bone spurs in her left wrist and tendonitis in her right wrist. (Tr. 618). She also testified that if she gets a pinched nerve in her neck, it usually ends up in a headache and also pain or numbness that can go down her arm and into her fingers; this happens daily. (Tr. 618). Plaintiff also gets migraine headaches a couple of times a month. When they happen, she has to lie down in the dark and quiet. (Tr. 622).

On a day-to-day basis, Plaintiff is capable of doing basic things to care for herself, such as showering, preparing meals, and using the bathroom. (Tr. 607). However, she showers only a couple of times a week, because she is not going anywhere, because she does not care how she looks or feels, because standing in the tub hurts her feet, and because her neck pain makes it painful to get her hands above her head and wash her hair; showers take much longer than they ever did before (Tr. 616-17). During the day, Plaintiff tries to set little goals for herself, like doing laundry or mopping the floor, but sometimes doing those things will cause her to be sore for several hours (Tr. 619-20). She likes to read (mostly articles about medical science and technology), and she

2

enjoys cooking but has to stand on a memory foam mat so that her feet are not killing her. (Tr. 620-21).

Plaintiff takes Zoloft, Wellbutrin, and Abilify; Abilify makes her very sleepy. (Tr. 623). These medications make her thoughts not as consistently dark as they were before. (Tr. 623).

With regard to Plaintiff's medical treatment records, the Court accepts the facts as presented in the parties' respective statements of fact. The Court will discuss specific records as necessary to address the parties' arguments. Briefly, the medical records show that since plaintiff's amended alleged disability onset date, she has sought treatment for symptoms including depression, anxiety, joint pain, hand pain, pain in both feet, headache, and back pain. The record also contains opinion evidence from Plaintiff's treating nurse practitioner dated during the relevant period, as well as opinion evidence dated several years before the amended alleged onset date.

## II.    PROCEDURAL BACKGROUND

On August 12, 2009, Plaintiff applied for DIB and SSI, alleging that she became disabled on May 13, 2019. (Tr. 108, 110). Her applications were initially denied. (Tr. 53-57). Plaintiff filed a Request for Hearing by Administrative Law Judge. (Tr. 66-67). After a hearing, the ALJ issued an unfavorable decision on April 26, 2011. (Tr. 6-29). Plaintiff requested review by the Social Security Administration's Appeals Council, and the Appeals Council denied the request for review. (Tr. 1-5). On October 26, 2012, Plaintiff filed a complaint in this Court seeking review of the Commissioner's denial of her application. (Tr. 663-66). On February 6, 2014, the Court entered a judgment remanding the case to the Commissioner for further proceedings. (Tr. 741-43). On January 16, 2019, Plaintiff amended her alleged disability onset date to April 1, 2015. (Tr. 791). On February 4, 2019, a second hearing was held before a different ALJ. (Tr. 602-33). On April 8,

2019, the second ALJ issued an unfavorable decision. (Tr. 578-99). The decision of the second ALJ stands as the final decision of the Commissioner of the Social Security Administration.

### III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or

a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 406.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## IV.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since April 1, 2015, the alleged onset date; that Plaintiff had the severe impairments of major depressive disorder, bipolar disorder, somatoform disorder, degenerative disc disease of the cervical and lumbar spine, obesity, and Morton's neuroma; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 583-84). The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: no more than occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; no more than occasionally stooping, kneeling, crouching, and crawling; no more than occasionally operating foot controls with the left foot; no more than frequently handling and fingering; never working at unprotected heights or with hazardous machinery; and less than occasional exposure to extreme temperatures and vibration. The claimant is further limited to performing only simple, routine, repetitive tasks with few changes in work setting and only occasional work related judgment.

(Tr. 586). At Step Four, the ALJ found Plaintiff was unable to perform her past work as a registered nurse or nursing supervisor. (Tr. 590). However, At Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including  representative occupations such as housekeeping, small product assembler, and cashier. (Tr. 591). Accordingly, the ALJ found that

Plaintiff had not been under a disability, as defined in the Act, from April 1, 2015, through the date of her decision. (Tr. 591).

## V.   DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) that the ALJ failed to properly evaluate the opinion of Plaintiff's treating nurse practitioner, Ms. Jill Kolchinsky; (2) that the RFC assessment is conclusory and is not supported by substantial evidence, including medical evidence; and (3) that the ALJ failed to conduct a proper analysis of Plaintiff's complaints of pain.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es]

not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B.   The Opinion of Plaintiff's Treating Nurse Practitioner

Plaintiff's first argument is that the ALJ failed to properly evaluate the opinion of Plaintiff's treating nurse practitioner, Ms. Jill Kolchinsky. On January 14, 2019, Ms. Kolchinsky completed a Medical Source Statement-–Physical for Plaintiff. (Tr. 1307-09). She noted that Plaintiff's diagnoses were major depression, polymyalgia, cervical disc disease, and lumbar disc disease. (Tr. 1307). She noted that Plaintiff's medications included Abilify, Zoloft, Wellbutrin, tramadol, Celebrex, Flonase, acyclovir ointment, Protonix, and lisinopril, and that tramadol and Abilify can be sedating. (Tr. 1307). She opined that during a typical workday, Plaintiff's pain or other symptoms would interfere with the attention and concentration needed for even simple work tasks 15 to 20% of the time. (Tr. 1307). She opined that Plaintiff could lift less than 10 pounds occasionally; that Plaintiff could use her hands for gross manipulation or fine manipulation less than two hours a day; that Plaintiff could use her arms for reaching less than two hours a day; that Plaintiff could stand for 30 to 45 minutes at one time and for a total of three hours in an eight-hour workday; that Plaintiff could walk five blocks at one time without rest or severe pain; that Plaintiff could sit for 61 to 90 minutes at one time; that Plaintiff would need periods of walking around every 46 to 60 minutes during an eight-hour day; that Plaintiff would need to shift positions at will

from sitting, standing, or walking; that Plaintiff would need unscheduled breaks more than three

times a day; and that Plaintiff would likely to be absent from work as a result of impairments or

treatment three or more days a month. (Tr. 1309). Asked what would cause Plaintiff to miss work,

she wrote, "unable to estimate." She opined that Plaintiff's limitations had existed at the assessed

severity since 2009. (Tr. 1309).

In her decision, the ALJ discussed Ms. Kolchinsky's opinion in detail, and then stated:

> The undersigned affords little weight to the opinions of Ms. Kolchinsky as
> to the claimant's functional limitations as they are not supported by the record as a
> whole. Of particular note, is the stark contrast between Ms. Kolchinsky's
> observations during the claimant's annual physical in July of 2017 and her
> functional limitations cited above with no evidence of significant medical
> worsening during the period at issue.

(Tr. 588).

Plaintiff argues that Ms. Kolchinsky is a treating physician whose opinion should have

been given controlling weight pursuant to 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Plaintiff

also argues that even if the ALJ did not give controlling weight to Ms. Kolchinsky's opinion, the

ALJ should have given deference to the opinion and weighed it using all the factors set forth in 20

C.F.R. §§ 404.1527, and 416.927.

As a preliminary matter, the Court notes that as a nurse practitioner, Ms. Kolchinsky is not

a "treating source" whose opinion may be entitled to controlling weight under the applicable

regulations. Plaintiff is correct that under the regulations applicable to Plaintiff's claim, if Social

Security Administration finds "that a treating source's medical opinion on the issue(s) of the nature

and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the claimant's] case record," that opinion will be given "controlling weight." 20 C.F.R.

§§ 404.1527(c)(2), 416.927(c)(2).[1] However, to be a "treating source" under these rules, a source must be an "acceptable medical source." 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2). *See also* SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight."); *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) ("[O]nly acceptable medical sources can be considered treating sources."). For purposes of claims filed before March 27, 2017, nurse practitioners are not considered "acceptable medical sources." 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). *See also Blackburn v. Colvin*, 761 F.3d 853, 859 (8th Cir. 2014). Thus, Ms. Kolchinsky is not considered a "treating source" whose opinion is entitled to controlling weight.

Ms. Kolchinsky is considered an "other" source of medical evidence. *Blackburn*, 761 F.3d at 859 (citing  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1)).The ALJ has more discretion when evaluating an opinion from an "other" medical source than when evaluating an opinion from an acceptable medical source. *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005). Such opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06–03p, 2006 WL 2329939, at *3. In weighing opinions from other medical sources, the ALJ should consider factors including the length and frequency of the relationship, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the

---

[1] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The Court will apply the version of the regulations that applies to claims filed before March 27, 2017.

impairment(s), and other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). *See also* SSR 06–03p, 2006 WL 2329939, at *4-*5.

After careful review of Ms. Kolchinsky's treatment notes and the rest of the medical records, the Court finds that the ALJ's decision to discount most of the functional limitations in Ms. Kolchinsky's opinion was consistent with the relevant regulations and well-supported by the evidence in the record. The Court first considers Ms. Kolchinsky's opinions regarding Plaintiff's physical functioning. Although Ms. Kolchinsky's opinions suggest that Plaintiff had extreme limitations in early every area of physical functioning (including lifting, reaching, standing, walking, and sitting), her treatment notes provide little to no support for those limitations. Instead, a review of Ms. Kolchinsky's treatment notes suggest that Plaintiff had only intermittent complaints of mild to moderate physical symptoms, mostly unsupported by significant objective findings, that responded well to treatment.

In February 2015 (shortly before the disability onset date), Plaintiff told Ms. Kolchinsky that her widespread joint pain had been greatly diminished since her mood had become controlled on Zoloft (Tr. 907); on examination, she had a normal range of motion in the neck and elsewhere, and no edema. (Tr. 908).

At her next visit, an annual physical examination in February 2016, Plaintiff reported using weight resistance bands and walking on her home treadmill. (Tr. 960). She told Ms. Kolchinsky that she had had three migraines in January and that she still had pain from her degenerative joint disease and (rarely) tingling down her right arm. (Tr. 961). She said she wanted to go back to a pain management doctor but was told she needed an updated MRI. (Tr. 961). On examination, she had normal range of motion in her neck and elsewhere, a supple neck, and no edema. (Tr. 962). Plaintiff had a cervical spine MRI in March 2016, which showed prior surgeries but only "mild

11

disc disease" and "very mild stenosis." (Tr. 1289-90). There is no indication that Plaintiff went to a pain management doctor during the relevant period.

At her next annual physical examination with Ms. Kolchinsky, in August 2017, Plaintiff reported widespread joint pain. (Tr. 1039). However, it was also noted that Plaintiff "has remained active; she is able to take care of several quad[riplegics] as part of her job. Requires heavy lifting and moving." (Tr. 1039). Plaintiff reported taking tramadol "rarely," taking meloxicam, and wanting to try Celebrex instead; she was switched to Celebrex. (Tr. 1039, 1041). Her review of systems was positive for arthralgias but negative for back pain and myalgias. (Tr. 1039). On examination, she had a normal range of motion in her neck and elsewhere, her neck was supple, and she had no edema. (Tr. 1040).

In March 2018, Plaintiff saw Ms. Kolchinsky for headache and jaw pain, but her review of systems was negative for arthritis and myalgias. (Tr. 1060). At her September 2018 yearly physical examination, Plaintiff complained of worsening depression and discussed her recent bunionectomy. but it was noted that her "joint pain is under control" with Celebrex and tramadol and that she was taking her pain medications only sporadically. (Tr. 1080). She also mentioned that she had had some mild headaches, but "[n]o migraines for a while." (Tr. 1080). On examination, she had a normal range of motion in her neck and elsewhere, a supple neck, and no edema. (Tr. 1081). In December 2018, Plaintiff returned to Ms. Kolchinsky for follow-up on depression; she noted that she had had sciatica flare-up the week prior, and her review of systems was positive for arthralgias, back pain, and myalgias, but no physical examination was done. (Tr. 1102-03). At a December 17, 2018 follow-up visit, Plaintiff discussed only mental symptoms. (Tr. 1121-22).

To the extent that Ms. Kolchinsky's opinions were based on Plaintiff's mental impairments, those opinions were also unsupported by her treatment notes. Although Plaintiff suggests that the ALJ improperly relied solely on notes from an August 2017 visit, a review of the record shows that the ALJ's conclusions are supported by the treatment notes as a whole. Ms. Kolchinsky opined that the limitations in her opinion had existed at the assessed severity since 2009, several years before the relevant period began. (Tr. 2009). However, the treatment notes show that for the vast majority of the relevant period (and not just on a single visit in August 2017), Plaintiff's depression was well controlled with medication. At her annual visits in February 2015, February 2016, and August 2017, Plaintiff reported feeling great or feeling well on her medication; Ms. Kolchinsky noted that Plaintiff's depression episodes were controlled by medication, and examination showed a normal mood and affect and no other objective signs of mental impairment. (Tr. 907-08, 960-62, 1038-40). In August 2017, Plaintiff completed a depression questionnaire on which she denied all of the listed symptoms (depressed mood most of the day or nearly every day for 2 weeks; markedly diminished interest or pleasure in all, or almost all, activities on most days for at least 2 weeks; significant weight loss or gain; insomnia or hypersomnia; agitation or slowed psychomotor responses; fatigue or loss of energy; feelings of worthlessness or guilt; indecisiveness or inability to concentrate; and recurrent thoughts of death or suicidal ideation). (Tr. 1038).

Plaintiff did experience a significant worsening of her depression in September 2018, continuing through December 2018. In September 2018, Ms. Kolchinsky noted that Plaintiff was crying and tearful, that her depression was not well controlled, that her sleep was disturbed, and that she was nervous, anxious, had a dysphoric mood, and had decreased concentration. (Tr. 1079-81). Plaintiff said that the depression had been set off when she had a bunionectomy and could not get around much; she also noted that her brother-in-law had recently passed away, her dog was

having health problems, and she was coming up on the anniversary of her mother's death. (Tr. 1080). At her next visits, both in December 2018, Plaintiff continued to have several significant symptoms of depression, and Ms. Kolchinsky adjusted her medication dosage, added new medications, and gave her the name of a counselor. (Tr. 1102-04, 1121-22). On December 17, 2018, Plaintiff reported that she was still feeling "blah," but reported that her depression was improving. (Tr. 1121). Ms. Kolchinsky noted that she was "responding well to the current treatment plan" and that she was "tearful at times but seems overall better." (Tr. 1121-22). There are no further records from Ms. Kolchinsky related to Plaintiff's depression, though an emergency room provider noted on December 31, 2018, that Plaintiff had a normal mood and affect. (Tr. 1381). The ALJ reasonably found that although Plaintiff's mental impairments warranted some mental limitations in the RFC, they did not support the opinion that Plaintiff would be frequently absent from work or would be significantly impaired in the ability to pay attention and concentrate even on simple work tasks.

The Court has also considered the notes from Plaintiffs' visits to other treatment providers, which show that although Plaintiff had a variety of physical complaints during the relevant period, they generally responded to treatment and did not result in ongoing limitations. In June 2015, Plaintiff saw a nurse practitioner for hand and foot pain, and examination revealed swelling and tenderness. (Tr. 940). Plaintiff was prescribed prednisone and hand exercises and advised to make a rheumatology appointment. (Tr. 934). However, later notes show no complaints of hand pain and no complaints of arthritis.

Plaintiff was treated by a podiatrist and had two foot surgeries during the relevant period (one on her right foot in 2016 and one on her left foot in 2018), but the record shows that both surgeries were successful and returned Plaintiff to normal activities within a short time frame. (Tr.

14

1149, 1322, 1325, 1334-35, 1338, 1341, 1345, 1357-58). In late October 2018, Plaintiff also developed a neuroma that caused pain in her left foot, for which she received an injection (Tr. 1319). On January 2, 2019, Plaintiff returned, reporting that the injection at the last visit had given her relief for roughly two months, but the pain had recently returned and was at a 3/10. (Tr. 1313, 1315). She was given another injection (Tr. 1315), and there are no further records to suggest ongoing significant pain, unrelieved by medication, or functional limitations related to the neuroma.

Plaintiff also saw various other providers, complaining at times of symptoms such as cough, nausea, or urinary issues, but those were not ongoing complaints. At those visits, notes regarding Plaintiff's general physical and mental condition were generally unremarkable: in March 2016, her review of systems was negative for muscle aches or joint pain (Tr. 982); in December 2016, her review of systems was negative for myalgias and she had a normal mood and affect (Tr. 998); in March 2017, her review of systems was negative for arthralgias and myalgias, she had a normal range of motion in the neck, her neck was supple, and she had a normal mood and affect (Tr. 1017-18); in March 2018, her review of systems was negative for arthralgias and myalgias (Tr. 1060); and in December 2018, she had normal strength and sensation in her upper and lower extremities, normal range of motion, no tenderness, normal gait, and normal mood and affect. (Tr. 1380-81).

In light of all of the above treatment notes, it was entirely reasonable for the ALJ to find Ms. Kolchinsky's opinion was entitled to only little weight and to discount the extreme limitations in that opinion. Moreover, although the ALJ did not expressly discuss all of the relevant factors in evaluating Ms. Kolchinsky's opinion, it is clear to the Court that a more extensive discussion would not have led the ALJ to give more weight to that opinion. First, although Ms. Kolchinsky

did have a longstanding treating relationship with Plaintiff, Plaintiff's visits with her were not particularly frequent; Plaintiff often went for periods of up to a year between visits with Ms. Kolchinsky. Second, there is nothing to indicate that Ms. Kolchinsky had any specialty or expertise in the areas she addressed. Third, Ms. Kolchinsky's opinion does not cite medical evidence to support her conclusions, and when asked why she opined that Plaintiff would miss work frequently, she wrote, "unable to estimate." (Tr. 1309).

For all of the above reasons, the ALJ's decision to give little weight to the opinion of Ms. Kolchinsky fell well within the "available zone of choice," and the Court will not disturb that decision. *See Hacker v. Barnhart*, 459 F.3d 934, 937-38 (8th Cir. 2006).

### C.  The RFC Assessment

Plaintiff's second argument is that the RFC assessment is conclusory and  is not supported by any medical evidence. A claimant's RFC is "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.945(a)(1). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)). However, "[e]ven though the RFC assessment draws from medical sources for support, it is

16

ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

After consideration of the record as a whole, the Court finds that this assessment was supported by substantial evidence, including medical evidence. As the ALJ recognized, Plaintiff has severe mental impairments and has several physical ailments during the relevant period, including foot problems and widespread joint pain. (Tr. 584-85, 589). However, the ALJ properly considered evidence, including medical evidence, supporting the conclusion that these conditions were not so severe that they would preclude Plaintiff from performing a limited range of light work with significant additional physical and mental limitations. (Tr. 586-90).

First, the RFC assessment is supported by the largely unremarkable objective findings in the record. These findings include a cervical spine MRI in March 2016 that showed only "mild disc disease" with "very mild stenosis." (Tr. 587, 1290); findings of normal range of motion throughout the relevant time frame (Tr. 908, 962, 1040, 1081); findings of normal neck range of motion and a supple neck throughout the relevant time frame (Tr. 908, 962, 1018, 1040, 1081); findings of normal strength and sensation in the upper and lower extremities (Tr. 1381); and a finding of normal gait (Tr. 1381). Aside from findings related to Plaintiff's foot problems, there are few positive objective findings in the record related to physical impairments. With regard to mental impairments, objective findings are almost all normal outside of the period of worsening depression in the September to December 2018 time frame. (Tr. 908, 962, 1018, 1038-40, 1381).

Second, the RFC finding is supported by Plaintiff's treatment notes, which generally suggested that Plaintiff's complaints were intermittent and responded well to treatment. As discussed above, Plaintiff sometimes reported joint pain and/or back pain (Tr. 961, 1039, 1103); however, notes also often indicate that Plaintiff's joint pain was controlled by medication (Tr. 907,

1080) and that Plaintiff's review of symptoms was negative for back pain (Tr. 1039, 1080), myalgias (Tr. 998, 1017,  1039, 1060) and/or arthralgias (Tr. 1060, 1247). In addition, as discussed above, Plaintiff's foot problems appear to have responded well to treatment, and the ALJ accounted for some ongoing limitations related to Plaintiff's Morton's neuroma by limiting her to no more than occasionally operating foot controls with the left foot. (Tr. 589). Moreover, as also discussed above, Plaintiff's reports of symptoms including headaches, jaw pain, hand and foot arthritis, cough, and nausea were isolated and short-lived. Finally, as discussed at length above, aside from a brief period in late 2018, Plaintiff generally reported that her depression was well-controlled with medication.

Third, the RFC is supported in part by Plaintiff's reports regarding her daily activities, including her part-time work during the relevant period. (Tr. 587). In February 2016, Plaintiff reported using weight resistance bands and walking on her home treadmill. (Tr. 960). In August 2017 (one of the visits at which Plaintiff reported widespread joint pain) she also reported remaining active and being able to take care of several quadriplegics, which required heavy lifting and moving. (Tr. 1039). Plaintiff also reported enjoying cooking and reading medical science articles, activities that require some degree of concentration and persistence. (Tr. 620-21).

Finally, the ALJ reasonably considered the opinion evidence in the record in making the RFC assessment. As discussed above, the ALJ reasonably gave little weight to the opinion of Ms. Kolchinsky, who opined that Plaintiff would have limitations much more severe than those in the RFC, because the extreme limitations in that opinion were not supported by the treatment notes. The ALJ also reasonably discounted the other opinions in the record, each of which suggested that Plaintiff would have fewer limitations suggested in the RFC. The ALJ gave "some weight" to the 2009 opinion of consultative examiner Llewelyn Sale, Jr., M.D., who found that Plaintiff would

have "slight limitation of activity" based on her prior back surgeries; however, the ALJ also reasonably found that Plaintiff's condition had worsened since Dr. Sales' assessment and that Plaintiff would have more limitations than he assessed. (Tr. 494, 589). The ALJ gave little weight to the 2009 opinion of consultative examiner Lynn Mades, Ph.D., who found only mild mental symptoms (Tr. 486-90) and the 2010 opinion of state agency medical consultant Marsha Toll, Psy.D., who found that Plaintiff did not have a severe mental impairment (Tr. 498-508). The ALJ reasonably found that those opinions were entitled to little weight in light of later evidence showing more significant mental limitations.

The Court finds that the above evidence constitutes substantial evidence, including medical evidence, to support the RFC assessment. The Court acknowledges that the RFC assessment does not reflect the limitations in any of the opinions in the record. However, it is well-established that the ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in determining a claimant's RFC." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quotation marks omitted)). *See also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (noting that "there is no requirement that an RFC finding be supported by a specific medical opinion"). Instead, "[i]t is the ALJ's responsibility to determine [claimant's] RFC based on all the relevant evidence." *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted). Here, although the RFC did not mirror any of the particular opinions in the record, the record contained opinion evidence regarding Plaintiff's ability to function from multiple sources. The ALJ properly determined Plaintiff's RFC based on all of the evidence in the record, including opinion evidence.

### D.  The ALJ's Evaluation of Plaintiff's Pain Complaints

Plaintiff's final argument is that the ALJ did not perform a proper evaluation of Plaintiff's subjective complaints of pain.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[2] In examining the record, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), & *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8 (describing several of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (same).

---

[2] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This ruling clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. § 416.929.

Social Security Ruling 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

After review of the record, the Court finds that the ALJ conducted a proper assessment of Plaintiff's symptoms of pain, consistent with SSR 16-3p and the relevant regulations, and that her assessment is supported by substantial evidence. As a preliminary matter, the Court notes that the ALJ did not entirely discredit Plaintiff's subjective complaints of pain in her neck, back, hands, and feet; the ALJ limited Plaintiff to light work with additional limitations, including limitations on Plaintiff's ability to use foot controls and Plaintiff's ability to handle and finger. To the extent that the ALJ did not find all of Plaintiff's claimed pain symptoms to create limitations that should be included in the RFC, the ALJ did so only after conducting an appropriate analysis of the record and the relevant factors, and making specific findings regarding the consistency of Plaintiff's asserted symptoms with the record. (Tr. 586-90).

The ALJ discussed Plaintiff's daily activities, including the fact that she worked as a private-duty nurse two days a week in 2017 (after the disability onset date) and was able to perform heavy lifting and moving at that time. (Tr. 586-87). *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the plaintiff's] daily activities, including part-time work . . were inconsistent with her claim of disabling pain."). *See also* 20 C.F.R. §§ 404.1571, 416.971 ("The work . . .  that you have done during any period in which you

21

believe you are disabled may show that you are able to work at the substantial gainful activity level. . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). The ALJ also properly considered Plaintiff's testimony that she was able (with some difficulty) to do activities such as cooking, self-care, and reading medical articles. (Tr. 586-87). While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), the types of daily activities Plaintiff reported tend undermine Plaintiff's complaints of disabling pain and to support the ALJ's finding that Plaintiff can perform light work. *See, e.g.*, *Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible).

The ALJ discussed the duration, intensity, and frequency of Plaintiff's symptoms and the effectiveness of her medications, discussing Plaintiff's complaints at various times and Plaintiff's reports that medications, injections, and surgeries improved her conditions (Tr. 587-88). *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

The ALJ also reasonably discussed the largely normal objective findings in the record. (Tr. 587). As discussed above, these include findings of only "mild" problems on a cervical MRI (Tr. 587, 1290); normal range of motion in the neck and elsewhere (Tr. 908, 962, 1040, 1081); normal strength and sensation in the upper and lower extremities (Tr. 1381); normal gait (Tr. 1381); and normal mood and affect. (Tr. 908, 962, 998, 1018, 1040, 1381). Although an ALJ may not reject

a claimant's statements about the intensity and persistence of her symptoms "solely because the available objective medical evidence does not substantiate" those statements, the regulations recognize that objective medical evidence is "a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). *See also Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain).

In sum, the Court finds that the ALJ conducted an express evaluation of Plaintiff's allegations of pain, considered several of the relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record. Although the ALJ did not expressly discuss all of the relevant factors, she was not required to do so. The intensity and limiting effects of a claimant's alleged symptoms are "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). Because the ALJ's evaluation of Plaintiff's complaints of pain is supported by substantial evidence, the Court must defer to that evaluation. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

## VI.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of September, 2020.